# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| EDDIE ROY TAYLOR, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-05-3429 |
| | § | |
| DOUGLAS DRETKE, | § | |
| Respondent. | § | |

## MEMORANDUM OPINION AND ORDER

Eddie Roy Taylor, an inmate of the Texas Department of Criminal Justice – Correctional Institutions Division, proceeding *pro se* and *in forma pauperis*, seeks habeas corpus relief under 28 U.S.C. § 2254 challenging his state felony conviction for aggravated robbery. Respondent has filed a motion for summary judgment, with a copy of the state court record. (Docket Entries No. 13, 15.) Petitioner has responded. (Docket Entry No. 22.)

Based on consideration of the pleadings, the motion and response, the record, and the applicable law, the Court **GRANTS** summary judgment and **DISMISSES** this action.

## I. PROCEDURAL BACKGROUND

Petitioner was convicted of aggravated robbery in cause number 01-11-06847-CR in the 284th District Court of Montgomery County, Texas. Following petitioner's plea of "true" to two enhancement paragraphs, the jury assessed punishment at seventy-five years incarceration. The conviction was affirmed on appeal. *Taylor v. State*, No. 10-02-112-CR (Tex. App. – Waco 2002, pet. ref'd) (not designated for publication). Discretionary review was refused. *Taylor v. State*, PDR No. 11-03. The Texas Court of Criminal Appeals denied

petitioner's state habeas application without a written order on findings of the trial court without a hearing. *Ex parte Taylor*, No. 62,466-01.

Petitioner raises the following grounds for federal habeas relief:

(1)    ineffective assistance of trial counsel in

        (a)    failing to object to a biased juror;

        (b)    failing to request a trial severance;

        (c)    failing to object to the law of parties jury charge;

(2)    denial of an impartial jury;

(3)    denial of due process in the motion for new trial;

(4)    insufficient evidence to support the deadly weapon finding; and

(5)    actual innocence due to insufficiency of the evidence.

Respondent argues that these grounds fail as a matter of law.

## II.  FACTUAL BACKGROUND

The state appellate court set forth the following statement of facts in its opinion:

Bobby Lynn Davenport testified that on August 28, 2000, she was the manager of the Chevron store where the robbery occurred. She identified State's exhibit 1 as the surveillance tape taken at the time of the robbery.

Jeannie Mims, a video analyst for the Houston Police Department, testified that the camera, or several of the cameras, were out of focus. She indicated that she was not able to enhance the video, but she did produce and identify several photographs from the surveillance tape. She stated that the photographs showed the person committing the robbery holding what appeared to be a large chrome pistol in his right hand and pointing it at the clerk.

Brent Alexander Fotion testified that on August 28, 2000, he was the cashier at the Chevron store at the time of the robbery. He indicated that he had wiped down the counter at the beginning of his shift. Referring to appellant and Christopher Taylor, a codefendant, Fotion testified that he did not recall seeing either of them come into the store that evening prior to the armed robbery. He indicated that the robbery occurred around 10:30 to 10:45 p.m. He stated that while he was doing paperwork, an assailant came through the east door of the store with a purple sweater lifted up over his face. He said that as the assailant approached the counter, a gun came up on top of the counter.

Fotion testified that the assailant said, 'This is no joke,' or 'This is not a joke. Give me all the money out of the till.' He indicated that the assailant had something up over his face during the entire robbery. He said that he only had a second or so to get a full-fledged view of the assailant. He related that he saw the assailant's left hand going to the counter itself. He stated that he eventually gave the assailant the money. He testified that the assailant left the building after getting the money.

Fotion testified that he saw his assailant get into a four-door Fleetwood Cadillac after the robbery. He indicated that he did not see which side of the car the assailant entered. When asked if he could see anyone else in the vehicle, he replied, 'No, I could not. Actually I could make out the silhouette and that was about it.' Later, he clarified his statement to indicate that he saw the silhouette of a second occupant in the vehicle. He indicated that he reported the robbery to 911. He identified State's exhibit 6 as a weapon that looked like the weapon used in the robbery.

Fotion testified that Conroe police requested he go home. He indicated that police called him within an hour at his apartment, asking him to go to a Motel 6 on I-45. He stated that upon his arrival he observed several individuals who were under arrest. He identified Christopher Taylor as his assailant.

Raymond Howard Hill, a crime scene investigator for the City of Conroe Police Department, testified that he went to the Chevron store after the robbery and was able to obtain fingerprints from the area of the counter that the cashier had indicated as the area that the assailant might have touched.

Michelle Randolph, an ex-girlfriend of Christopher Taylor, testified that she was with appellant, Christopher Taylor, and others at the appellant's house on the evening of the robbery. She indicated that Christopher Taylor and

appellant left the house somewhere between 10 and 10:45 p.m.  She said Christopher Taylor was driving the car when they left.  She said they went to the Motel 6 after they returned, where they encountered police.

Officer Jimmy Chilcutt, a latent fingerprint examiner for the Conroe Police Department, testified that he compared known fingerprints of Christopher Taylor to a print taken from the counter where the robbery occurred and that the print on the counter was that of Christopher Taylor.

Lenny Robinson, a friend and former co-worker of appellant, testified that at the time of trial he was in prison for violation of his probation.  He indicated that on the evening of the robbery he was with appellant, Christopher Taylor, and others at appellant's place of residence.  He stated that on one occasion Christopher Taylor and appellant left the residence and were gone about an hour or so.  He related that Christopher Taylor had counted out a few dollars to appellant after they had returned.  He indicated that he did not know the amount.  He said he had seen Christopher Taylor with a handgun at the house.  He said appellant brought a shotgun from the house to the car before they went to the Motel 6, saying that he wanted to sell it . He reported that police confronted them at the Motel 6.

Officer Joseph Farah testified that on August 28, 2000, he was a police officer with the Conroe Police Department.  He indicated that he was present when Christopher Taylor was arrested at the Motel 6.  He stated that Christopher Taylor was the driver of the car at the time of his arrest.

James Scott Moore testified that on August 28, 2000, he was a deputy sheriff with the Montgomery County Sheriff's Office, assigned to the patrol division. He indicated that while patrolling just outside the city he observed a car, its motor running and someone sitting in the driver's seat, parked to the side of a Citgo store.  He related that he was suspicious because the parking places in front of the store were all unoccupied.  He said that a black male with no shirt and baggy pants came out and got in the passenger side of the vehicle. He identified Christopher Taylor as the individual who had been in the store and who got into the passenger side of the vehicle.  He related that he obtained a license plate number of the vehicle, which was a large, dark-brown, four-door Cadillac.

Officer Moore testified that thereafter he received a dispatch concerning the robbery at the Chevron store, involving a large dark brown Cadillac.  He stated that he called the Conroe Police Department on his radio and told them

4

that he had seen a vehicle similar to the one described. He provided them with a license plate number of the vehicle he had seen. He said that the Chevron store is located approximately 8-9 miles from the Citgo store and that it would take about 10 minutes to get there. He estimated that the vehicle left the Citgo store probably about 10:05-10:06 p.m.

*Taylor*, at 2-5. Petitioner and Christopher Taylor were jointly tried and found guilty of aggravated robbery. The trial court made an affirmative finding of use of a deadly weapon.

## III.   THE APPLICABLE LEGAL STANDARDS

### A.   Habeas Corpus Petition Under AEDPA

This petition is governed by applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). 28 U.S.C. § 2254. Under the AEDPA, federal relief cannot be granted on legal issues adjudicated on the merits in state court unless the state adjudication was contrary to clearly established federal law as determined by the Supreme Court, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000); 28 U.S.C. §§ 2254(d)(1), (2). A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court or if it confronts a set of facts that are materially indistinguishable from a Supreme Court decision and arrives at a result different from the Supreme Court's precedent. *Early v. Packer*, 537 U.S. 3, 7-8 (2002).

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or

5

unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409.   In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable. *Id.* at 411.

The AEDPA affords deference to a state court's resolution of factual issues.  Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state-court proceeding. *Miller-El v. Cockrell*, 537 U.S. 322, 343 (2003).  A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Miller-El*, 537 U.S. at 330-31.

## B.   Motion for Summary Judgment

Respondent's motion for summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure.  In deciding a motion for summary judgment under Rule 56, the district court must determine whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes

6

demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmoving party to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

All of the evidence must be construed in the light most favorable to the non-moving party without weighing the evidence, assessing its probative value, or resolving any factual disputes. *Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir. 1996). However, factual controversies are resolved in favor of the nonmovant only when there is an actual controversy—that is, when both parties have submitted evidence of contradictory facts. *Laughlin v. Olszewski*, 102 F.3d 190, 193 (5th Cir. 1996). In that regard, a fact is material if its resolution in favor of one party might affect the outcome of the lawsuit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Moreover, an issue is genuine, for purposes of a Rule 56 review, if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.*

## IV.  INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. U.S. CONST. amend. VI. A federal habeas corpus petitioner's claim that he was denied effective assistance of counsel is measured by the standards set out in *Strickland v. Washington*, 466 U.S. 668 (1984). To assert a successful ineffectiveness claim, a petitioner must establish both constitutionally

deficient performance by counsel and actual prejudice as a result of counsel's deficient performance. *Id.* at 687. The failure to demonstrate either deficient performance or actual prejudice is fatal to an ineffective assistance claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

A counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy. *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996). To overcome this presumption, a petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). However, a mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Strickland*, 466 U.S. at 691.

Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id.* at 694. To determine prejudice, the question focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). In that regard,

8

unreliability or unfairness does not result if the ineffectiveness does not deprive the petitioner of any substantive or procedural right to which he is entitled. *Id.*

Petitioner alleges the following instances of ineffective assistance of counsel, each of which is addressed separately.

## A.     Failure to Object to a Biased Juror

Petitioner claims that during voir dire, he informed trial counsel that one of the venire members, Carrie Ford, was "the first cousin of the defendant's brother-in-law" and was biased against his family. Trial counsel did not move to strike Ford, and she became a member of the jury. Petitioner argues that counsel was deficient in failing to object to Ford, and that but for such deficiency, there is a reasonable probability that he would have been found not guilty.

In his affidavit submitted to the state habeas court, trial counsel testified as follows:

[Petitioner] has alleged that there was knowledge of juror misconduct known to me prior to or during the course of the presentation of the trial.

The alleged juror misconduct was made known to me at the conclusion of the penalty phase of the trial by a relative of the defendants being overheard by me while they were in conversation with the Attorney representing the co-defendant of [petitioner].

The conversation revealed that the co-defendant Attorney, the relatives, and the two defendants all knew the juror from the outset of the jury selection process. The juror lived in the neighborhood of the Defendants and had known both for many years. This identity was not disclosed to me or discussed with me by [petitioner] or from the other Attorney representing the co-defendant.

At the conclusion of the trial, it became apparent that the parties 'in the know' had expected the juror to vote for acquittal and hang the jury. The

actual result was the opposite. The juror apparently took the lead in the conviction and punishment of the defendants, having made comments to other jurors that the defendants deserved what ever they get.

Upon hearing of this juror, Ms. Carrie Ford, I approached the two Assistant District Attorneys and asked if they were aware of this apparent problem. They were not.

I was then told that the bailiff was aware of the comments of the juror and had said the juror had a vocal role in the process in the deliberation.

The judge was approached and subsequent motions were timely made. Judge Underwood, the presiding judge, heard the motion for new trial based on juror misconduct. The decision of the court was to uphold the verdict and punishment of the jury.

*Ex parte Taylor*, pp. 8-9. The state habeas court found trial counsel's affidavit testimony credible. *Id.*, p. 152 (Finding No. 6). In rejecting petitioner's argument and denying habeas relief, the state habeas court made the following relevant findings:

9. [Trial counsel] did not learn about Juror Carrie Ford's alleged juror misconduct until after the trial concluded.

10. [Petitioner] presents no evidence from any other juror.

11. In the alternative, [petitioner] failed to prove that there is a reasonable probability that, but for counsel's unprofessional error, if any, the result of the proceeding would have been different.

*Ex parte Taylor*, p. 152. The state court concluded that petitioner failed to meet his burden of proof under *Strickland. Id.*, p. 154.

The record shows that after he became aware of the problem, trial counsel filed a motion for new trial. The trial court set the motion for an evidentiary hearing, and following presentation of evidence by the parties, denied the motion. Petitioner reurged his

10

complaints on state collateral review. The state habeas court found that the complaints petitioner raised against Ford on collateral review were different from those he raised in his motion for new trial. *Ex parte Taylor*, p. 153. The habeas court found that petitioner had no personal knowledge in support of his new claims against Ford, and that he failed to present evidence to support the claims on collateral review. *Id.* The state court further concluded that "[Petitioner] fails to show that he has personal knowledge of the facts underlying his theories for why Juror Ford was allegedly biased against his family, and he is not competent to make the statements in his affidavit." *Id.*, p. 154. In short, the state habeas court found that petitioner failed to present probative evidence of either actual bias or prejudice on the part of Ford or trial counsel's awareness of any potential bias or prejudice on Ford's part prior to or during trial.

This Court's review of the record reveals no clear and convincing evidence that trial counsel was aware of potential bias or prejudice on the part of Ford during trial, or that Ford was actually biased or prejudiced against petitioner or his family. As a result, petitioner fails to rebut the presumed correctness of the state court's factual determinations.

The state habeas court denied relief on this issue. Petitioner fails to show that the state court's determination was contrary to or involved an unreasonable application of *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. No basis for habeas relief is shown, and respondent is entitled to summary judgment on this issue.

11

**B.      Failure to Request a Trial Severance**

Petitioner claims that counsel was ineffective in failing to request and obtain a separate trial from that of his co-defendant, Christopher Taylor. He argues that had he been tried separately, he would have been acquitted because Christopher Taylor would have testified in his favor.

In his affidavit submitted to the state habeas court, trial counsel testified as follows:

> The second issue [on habeas] was whether a motion to sever was considered and, if so, why not filed. In numerous conversations with [petitioner] during trial preparation, the question of whether the trial would be fair to [him] was discussed. The issue to sever was openly discussed on several occasions and, in each instance, [petitioner] did not elect to pursue that course of action. The facts of the case were interwoven with the co-defendant and it was apparent that [petitioner] felt that the jury would not convict him.

*Ex parte Taylor*, p. 9. The state habeas court found trial counsel's affidavit testimony credible. *Id.*, p. 152 (Finding No. 6). In rejecting petitioner's argument and denying habeas relief, the state habeas court made the following relevant findings:

> 12. [Petitioner] does not attach the affidavit of Christopher Taylor stating that he would have been willing to testify if [petitioner] had been separately tried and what he would have testified to.
>
> 13. Based on the evidence adduced at trial, and the absence of Christopher Taylor's affidavit, there is no reasonable probability that but for counsel's unprofessional errors, if any, the result of the proceeding would have been different.

*Id.*, pp. 152-53. The state court concluded that petitioner failed to meet his burden of proof under *Strickland*. *Id.*, p. 154.

Petitioner contends that he never agreed to forgo a severance.  Arguing in the alternative, he contends that even if he did agree to forgo a severance, counsel nevertheless should have pursued a separate trial to protect petitioner.  The gravamen of petitioner's claim is his assertion that co-defendant Christopher Taylor would have testified in petitioner's favor, exonerating him of any participation in the robbery.  However, in the absence of an affidavit of Christopher Taylor or any supportive evidence in the record, petitioner's arguments are nothing more than conclusory allegations insufficient to raise a genuine issue of material fact precluding summary judgment.

The state habeas court denied relief on this issue.  Petitioner does not meet his burden of rebutting by clear and convincing evidence the presumed correctness of the trial court's underlying factual determinations.  Nor does he show that the state court's determination was contrary to or involved an unreasonable application of *Strickland* or was an unreasonable determination of the facts based on the evidence in the record.  No basis for habeas relief is shown, and respondent is entitled to summary judgment on this issue.

## C.     Failure to Object to the Law of Parties Charge

A liberal construction of his pleadings suggests that petitioner claims trial counsel was deficient in failing to object to the inclusion of a law of the parties jury charge.[1]  Trial counsel is not required to make futile motions or objections.  *Koch v. Puckett*, 907 F.2d 524,

---

[1]Under the "law of the parties," a person is criminally responsible under Texas law for an offense committed by the conduct of another if, acting with the intent to promote or assist the commission of the offense, he or she solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. Tex. Pen. Code § 7.02(a)(2) (Vernon 1994).

527 (5th Cir. 1990). To prevail on his claim, petitioner must show that the objection, if made, would have been granted, and that but for counsel's deficient performance, the result of the trial would have been different.

Petitioner presents no legal authority establishing that counsel's objection to the law of parties charge would have granted. Further, the state court of appeals found factually and legally sufficient evidence to support the jury's verdict in light of the law of parties charge. *Taylor*, at 6-7. Petitioner shows no basis for habeas relief, and respondent is entitled to summary judgment on this ground.

## V.   DENIAL OF AN IMPARTIAL JURY

Petitioner claims that his constitutional right to a fair and impartial jury was denied because of Ford's bias and prejudice against him. Petitioner failed to raise this issue on direct appeal, and the state habeas court found that the claim was not cognizable on state habeas review. *Ex parte Taylor*, pp. 153-54. In Texas, it is clearly established that claims which could have been raised on direct appeal are barred from collateral review. *See Busby v. Dretke*, 359 F.3d 708, 719 (5th Cir. 2004); *Finley v. Johnson*, 243 F.3d 215, 219 (5th Cir. 2001). Accordingly, this issue has been procedurally defaulted and may not be considered by this Court.

A federal court will not entertain a procedurally defaulted constitutional claim in a petition for habeas corpus absent a showing of cause and prejudice to excuse the default, *Dretke v. Haley*, 541 U.S. 386, 388 (2004), or, to the extent such exception is applicable to non-sentencing error in a non-capital case, that the federal court's failure to consider the

14

claim will result in a miscarriage of justice due to actual innocence. *Sawyer v. Whitley*, 505 U.S. 333, 339-40(1992); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  In the instant case, petitioner makes no attempt to show cause and prejudice for his default or that failure to consider this ground will result in a fundamental miscarriage of justice.  Although petitioner argues in his response to the motion for summary judgment that "it was appellate counsel's job and duty to raise the issue and order transcripts of the hearing," (Docket Entry No. 22, p. 4), the issue of ineffective assistance of appellate counsel was not raised in state court and is itself procedurally defaulted.  Consequently, the Court is satisfied that petitioner's claim of an impartial jury should be denied as procedurally defaulted.  *See Hughes v. Johnson*, 191 F.3d 607, 614 (5th Cir. 1999) (holding that the procedural default doctrine precludes federal habeas review when the last reasoned state court opinion addressing such claim explicitly rejected it on a state procedural ground).

Regardless, and as previously noted by this Court, the state habeas court found no probative evidence of actual bias or prejudice on the part of Ford, and petitioner fails to rebut the presumed correctness of that finding with clear and convincing evidence.  In absence of probative evidence of Ford's bias or prejudice against petitioner or his family, his claim for denial of an impartial jury fails.  No basis for habeas relief is shown, and respondent is entitled to summary judgment on this issue.

## VI.  MOTION FOR NEW TRIAL HEARING

Petitioner argues that he was denied due process because the trial judge who heard his motion for new trial was not the trial judge who presided at trial.  He alleges that the trial

15

judge at the hearing failed to inquire fully into the asserted juror misconduct, failed to develop the underlying facts, and "was not in the best position to observe the jurors' demeanor." (Docket Entry No. 1, p. 7b.) No statement of facts from the motion for new trial hearing appears in the record.

In rejecting petitioner's arguments on collateral review, the state habeas court made the following relevant findings:

> 4.   [Petitioner] filed a motion for new trial on December 20, 2001, which was denied after a hearing held on February 19, 2002[.]
>
> 22.   [Petitioner] knew that a different judge than the judge who heard his jury trial was hearing his motion for new trial.
>
> 23   Based on the record, [petitioner] did not object to having a different judge hear his motion for new trial.

*Ex parte Taylor*, p. 154.  The habeas court concluded that the trial court did not abuse its discretion in denying a new trial.  *Id.*  The habeas court further concluded that petitioner's complaints regarding the motion for new trial hearing should have been raised on direct appeal and were not cognizable in state habeas proceedings.  *Id.*  Accordingly, this issue has been procedurally defaulted and may not be considered by this Court.  *See Busby v. Dretke,* 359 F.3d 708, 719 (5th Cir. 2004); *Finley v. Johnson,* 243 F.3d 215, 219 (5th Cir. 2001). Where a state court has expressly relied on a procedural bar in denying relief, a petitioner may not obtain federal habeas relief absent a showing of cause for the default and actual prejudice attributable to the default.  *Murray v. Carrier,* 477 U.S. 478, 485 (1986).  The record does not reveal good cause for petitioner's default.

Petitioner further fails to provide, and this Court is unaware of, any Supreme Court authority holding that federal due process requires a motion for new trial to be heard only by the judge who presided over the trial. Petitioner fails to show that the state court's determination was contrary to clearly established federal law as determined by the Supreme Court, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *Williams,* 529 U.S. at 404-05 (2000); 28 U.S.C. §§ 2254(d)(1), (2). Nor does petitioner show that the state court's adjudication was an unreasonable determination of the facts based on the evidence in the record.

Regardless, errors in state postconviction proceedings will not, in and of themselves, entitle a petitioner to federal habeas relief. *Morris v. Cain,* 186 F.3d 581, 585 n. 6 (5th Cir. 1999). No basis for habeas relief is shown, and respondent is entitled to summary judgment on this issue.

## VII.   DEADLY-WEAPON FINDING

The trial court made an affirmative finding that a deadly weapon was used in the commission of the aggravated robbery. *Ex parte Taylor,* p. 152 (Finding of Fact No. 3.) Petitioner raised no issues on direct appeal regarding the affirmative finding, and the state court on collateral review held that petitioner's challenge to the finding was not cognizable on habeas. *Id.,* p. 154 (Conclusion No. 7.) As already stated, claims which could have been raised on direct appeal are barred from collateral review. *Busby,* 359 F.3d at 719. Accordingly, this issue has been procedurally defaulted and may not be considered by this Court.

17

A federal court will not entertain a procedurally defaulted constitutional claim in a petition for habeas corpus absent a showing of cause and prejudice to excuse the default, *Haley*, 541 U.S. at 388, or, to the extent such exception is applicable here, that the federal court's failure to consider the claim will result in a miscarriage of justice due to actual innocence. *Sawyer*, 505 U.S. 333 at 339-40. Petitioner makes no attempt to show cause and prejudice for his default or that failure to consider this ground will result in a fundamental miscarriage of justice. To the extent petitioner now complains that appellate counsel was deficient in failing to challenge the deadly-weapon finding on appeal, the issue of ineffective assistance of appellate counsel was not raised in state court and is itself procedurally defaulted. Consequently, the Court is satisfied that petitioner's challenge to the deadly-weapon finding should be denied as procedurally defaulted. *See Hughes v. Johnson*, 191 F.3d 607, 614 (5th Cir. 1999).

Petitioner shows no basis for habeas relief, and respondent is entitled to summary judgment on this issue.

## VIII.  ACTUAL INNOCENCE

A liberal construction of his pleadings suggests that petitioner claims he is actually innocent because the State failed to present any evidence of his presence at or knowledge of the robbery. The Court will construe his argument as a challenge to the legal and factual sufficiency of the evidence to support the conviction. Claims of factual insufficiency are not cognizable under 28 U.S.C. § 2254. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991); *Woods v.*

*Cockrell*, 307 F.3d 353, 357-58 (5th Cir. 2002). Thus, petitioner's claim of innocence based

on factual insufficiency of the evidence affords him no basis for habeas relief.

Petitioner's claim of innocence based on legal insufficiency of the evidence is subject

to review, but affords him no meritorious basis for habeas relief. The state court of appeals

found the evidence legally sufficient, as shown by the following:

> The evidence shows that Christopher Taylor, not appellant, committed the robbery. The Texas Penal Code provides that a person is criminally responsible for an offense committed by the conduct of another if, acting with the intent to promote or assist the commission of the offense, he or she solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense.
>
> Considering all of the evidence, including evidence that appellant and Christopher Taylor left appellant's place of residence and returned together, evidence that Christopher Taylor was accompanied by just one other person at both the Citgo store and the robbery, and evidence that Christopher Taylor gave money to appellant after the robbery, a jury could reasonably conclude that appellant was with Christopher Taylor both at the Citgo store and at the Chevron store during the robbery. Given the same evidence, including evidence that Christopher Taylor was the passenger in the car at the Citgo store, and evidence of the suspicious location of the car at the Citgo store, the jury could reasonably conclude that appellant was serving as the driver of the getaway car during the robbery and he knew that a robbery was taking place. We hold that the evidence is legally sufficient to support appellant's conviction.
>
> *     *     *     *
>
> Appellant urges that at best the evidence shows that he was merely present when the robbery was committed and that the evidence failed to show that he had any prior knowledge that Christopher Taylor was going to commit the robbery. As noted, we believe the evidence shows that appellant was not merely present during the robbery but was driving the getaway car with knowledge that the robbery was taking place.

*Taylor*, at 6-7 (citations omitted).

19

This Court has reviewed petitioner's legal insufficiency claim and finds it without merit. In reviewing the sufficiency of the evidence, the federal standard for review is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Under this standard, the jury may disregard any evidence it chooses to disregard, as it is the "responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts." *Id.* Any contradictory testimony does not affect the validity of the guilty verdict. *Id.* The evidence can be sufficient to support a conviction under *Jackson* even when it also supports a claim of innocence. *See Gibson v. Collins*, 947 F.2d 780, 783 (5th Cir. 1991).

The evidence set forth by the state court of appeals in its opinion is itself enough to allow a rational trier of fact to convict petitioner of the allegations in the indictment and jury charge, and the evidence presented at trial was enough to defeat a legal sufficiency challenge in a Texas appellate court. *See King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000); *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). Moreover, an independent review of the trial record reveals sufficient evidence under *Jackson* to sustain the jury's verdict.

Regardless, a claim of actual innocence, standing alone, is insufficient to merit federal habeas relief. *See Herrera v. Collins*, 506 U.S. 390, 400 (1993); *Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir. 2000). Federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution, not to correct errors of fact. *Herrera*, 506 U.S.

at 400. There also must be evidence of an independent constitutional violation in the state criminal proceeding. *Dowthitt*, 230 F.3d at 741. To show actual innocence, a petitioner must establish that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt in light of all of the evidence, including that alleged to have been illegally admitted and evidence tenably claimed to have been wrongly excluded or to have become available only after trial. *Schlup v. Delo*, 513 U.S. 298, 321(1995).

In *Schlup*, the Supreme Court recognized the distinction between petitioners who assert that their actual innocence in itself presents a violation of their constitutional rights and petitioners who assert that their actual innocence acts as a catalyst to bring them within that "narrow class of cases" in which the refusal of the court to hear their underlying constitutional claims will result in "a fundamental miscarriage of justice." 513 U.S. at 314-15. Actual innocence in this second type of petition is not itself a basis for federal habeas relief; it is, however, "a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Id.* at 315.

To the extent petitioner claims actual innocence based on the constitutional errors raised in his petition, this Court has found no errors of constitutional dimension. Petitioner shows no basis for habeas relief under his actual innocence claim. *See Fahle v. Cornyn*, 231 F.3d 193, 196-97 (5th Cir. 2000). Respondent is entitled to summary judgment on this issue.

## IX.  CONCLUSION

Respondent's motion for summary judgment (Docket Entry No. 15) is **GRANTED**. The petition for a writ of habeas corpus is **DENIED**, and this case is **DISMISSED WITH**

**PREJUDICE**.  A certificate of appealability is **DENIED**.  Any and all pending motions are

**DENIED AS MOOT**.

The Clerk will provide a copy of this order to the parties.

Signed at Houston, Texas, on this the $12$ day of June, 2006.


KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE